`UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 07-10047-CR-MOORE/TORRES

UNITED STATES OF AMERICA,

      Plaintiff,

v.

MANUEL FRIERE,

      Defendant.

_____/

## REPORT AND RECOMMENDATION ON
## PETITION FOR REVOCATION OF SUPERVISED RELEASE

This matter is before the Court on the Government's Petition for Revocation of Supervised Release ("Petition") for Defendant Manuel Friere ("Defendant"). [D.E. 132].[1] The government alleges that Defendant violated conditions of his supervised release and requests that his term of supervised release be revoked. Defendant admitted Violation 1 of the Petition which charges him with violating the mandatory condition that he not leave this judicial district without proper authorization. Defendant denied Violations 2, 3, and 4 which allege that he committed certain criminal offenses on January 4, 2014 in violation of the mandatory condition that he refrain from violating the law.

An evidentiary hearing was held on this matter on June 4, 2014. Based on the evidence adduced at the hearing and the record as a whole, and for the reasons stated

---

[1]      The Honorable K. Michael Moore referred this matter to the undersigned Magistrate Judge. [D.E. 140].

in open court at the conclusion of the hearing that are memorialized here, we find that the government established by a preponderance of the evidence that Defendant committed the offenses of burglary of an unoccupied conveyance and possession of burglary tools as set forth in Violations 2 and 4 of the Petition.  The government failed to establish grand theft, though, a point that government counsel conceded at the end of the hearing.  Accordingly, we find that the government did not meet its burden with regard to Violation 3 of the Petition.

Given our findings as to Violations 2 and 4 as well as Defendant's admission regarding Violation 1, we recommend that the Petition be Granted in part and that Defendant's supervised release be revoked.

## I.    FACTUAL FINDINGS

At approximately 10 p.m. on January 4, 2014, Brevard County Deputy Sheriff David Kolker responded to a call about suspicious activity at a vacant house in a rural part of the county.  The caller reported hearing the sound of power tools coming from the fenced-in back yard of a house across the street that he knew was vacant at the time.  The caller also reported seeing a couple of silhouettes in the back yard and thought the individuals might be trying to steal the neighbor's boat or something connected to the boat.

It was very dark at the vacant house.  As Deputy Kolker approached on foot, he heard the sounds and saw the silhouettes in the back yard just as the caller had described.  The deputy entered the back yard through a gate and began walking towards two individuals who were in the vicinity of a boat trailered in the middle of the

yard.  The man later identified as Defendant was crouching down behind the back of the boat, reaching toward the outboard motor with tools in his hands in an apparent attempt to remove the engine from the boat.  The other man was actually on the boat, next to the motor.

Deputy Kolker announced himself and eventually both men complied with his commands to get on the ground.  Although neither attempted to flee, Deputy Kolker explained there really was nowhere to go:  the yard was completely fenced in and the men were hemmed in by the boat in question, another vessel that was positioned nearby, and the deputy himself who was blocking their access to the open gate.

Based on the deputy's experience and training, it appeared that the men were in the process of removing the engine from the boat.  Pliers, wrenches, and numerous other tools were spread out on the ground.  A battery-powered hammer drill was located under the back of the boat, and a pair of pliers was laying on top of a pile of leaves and debris that had accumulated on a step at the back of the boat.  Every compartment on the boat that had to be accessed so that the engine could be removed from the boat was open.  The boat had been untouched for so long that freshly-made scrapes around the "thru-bolt" (a thick bolt that passes through the transom and secures the engine to the transom) were very noticeable.  In addition, a full-sized pickup truck registered to Defendant's companion was parked just outside the gate through which the men had entered.

Later, Defendant provided a statement to officers.  He stated that he was in the area because he was looking for a property to rent.  He claimed that when he came upon the property in question, he saw the boat in the back yard, noticed how

dilapidated it was, and thought it was abandoned so he decided to remove the engine and use it on his own boat.

Deputy Kolker subsequently confirmed that Defendant did not own the home and was not the registered owner of the boat. The homeowner, who had purchased the boat from its registered owner, informed the deputy that no one had permission to enter onto his property or any of his vessels or to take anything therefrom.

Defendant was arrested and charged with one count each of burglary of an unoccupied structure or conveyance in violation of Fla. Stat. § 810.02(4); grand theft in the third degree in violation of Fla. Stat. § 812.014(2)(c); and possession of burglary tools in violation of Fla. Stat. § 810.06.[2] The charges remain pending in state court.

Shortly after the aforementioned incident, U.S. Probation Officer Amanda Peters, who supervises Defendant, filed the Petition that is now before us. The Petition alleges that Defendant violated a mandatory condition of supervised release by leaving the judicial district without first securing her permission or that of the Court (Violation 1). The Petition also alleges that Defendant violated another mandatory condition of supervised release by committing additional violations of law, namely, the offenses set forth above (Violations 2, 3, and 4). Based on these violations, the government seeks revocation of Defendant's Supervised Release.

## II.   ANALYSIS

### A.   *Applicable Standard*

---

[2]      The Petition mistakenly cites to the wrong statute (Fla. Stat. § 810.024) when specifying the charged offenses of grand theft and possession of burglary tools. [D.E. 132 at 2].

In order to revoke a defendant's supervised release, the Court must find by a preponderance of the evidence that the defendant violated a condition of supervised release. *See* 18 U.S.C. § 3583(e)(3). The reasons for revoking supervised release and the evidence the Court relies upon should be either formalized in written findings or orally announced and recorded or transcribed. *See United States v. Copeland*, 20 F.3d 412, 414 (11th Cir. 1994).

### B.   *Discussion*

1.   Burglary of an Unoccupied Conveyance and Possession of Burglary Tools

In Florida, "burglary" is defined as entering or remaining in a structure or conveyance with the intent to commit an offense therein, unless the conveyance is at the time open to the public or the defendant is licensed or invited to enter or remain. *See* Fla. Stat. § 810.02(1)(b)1. Burglary is a third-degree felony if the structure or conveyance entered or remained in is unoccupied. *See* Fla. Stat. § 810.02(4). A proper analysis of this offense requires consideration of both "the act constituting the entry and the intent to commit an offense therein." *Drew v. State*, 773 So. 2d 46, 52 (Fla. 2000) (holding that the sole act of removing a hubcap or tire from a motor vehicle clearly constituted a criminal larceny but did not constitute a burglary); *see also Barton v. State*, 797 So. 2d 1276, 1277 (Fla. 4th DCA 2001) (holding that competent substantial evidence supported the defendant's conviction for burglary of a conveyance where the defendant reached in and over the top of the side rails of the bed of a truck, grabbed a bike, and lifted it up out of the truck).

In this case it is undisputed that Defendant did not have permission to enter the fenced-in back yard of the vacant house and he did not have permission to remove the outboard motor from the boat on the property.  Defendant acknowledges that he entered the conveyance but asserts he lacked the requisite intent to commit an offense therein because he had a good-faith belief that the boat was abandoned and the motor was available for the taking.

Defendant's claim of good faith is severely undermined by other evidence in the record.  His statement that he was out looking to rent property on the night in question – at 10 o'clock at night in rural Brevard County –  is simply not credible.  He did not contact the property owner before he and his companion entered the fenced-in back yard of the vacant property without permission.  It was very dark and the men used minimal lighting as they methodically began the process of removing the motor.  They laid out their tools, opened the various compartments on the boat, had a large pickup truck at the ready, and were in the process of removing the motor when Deputy Kolker arrived.

Under the totality of the circumstances, we find this evidence is sufficient to establish circumstantially that Defendant intended to steal the outboard motor.  The government did not have to prove that Defendant committed grand theft (as charged in the Petition but not proven, *see* Section II.B.2.), just that he intended to commit *some* offense.  *See, e.g., Toole v. State*, 472 So. 2d 1174, 1175 (Fla. 1985) (reiterating that to prove burglary, the state had to show, in addition to an unauthorized entry or

remaining in a structure or conveyance, a defendant's intent to commit *an* offense, not a *specified* offense, therein).  That it did.

On the record before us, we find that the government met its burden of establishing by a preponderance that Defendant committed burglary of an unoccupied conveyance.  Given these findings, we likewise find that the government met its burden with respect to proof of Defendant's possession of burglary tools.  Consequently, we conclude that the government has established Violations 2 and 4 of the Petition.

2.   <u>Grand Theft</u>

The government failed to demonstrate that Defendant committed the offense of grand theft in the third degree.  To prove this offense, the government had to show that the value of the outboard motor was at least $300 but not more than $5,000.  *See* Fla. Stat. § 812.014(2)(c)1.  The government neglected to present any evidence as to value. Based on this record, we find (and the government concedes) that there is no basis to find even by a preponderance standard the value of the motor that Defendant intended to take.  Accordingly, we conclude that the government failed to establish Violation 3.

### III.   *CONCLUSION*

Based on the foregoing, the undersigned Magistrate Judge hereby **RECOMMENDS** that the Government's Petition for Revocation of Supervised Release for Defendant Manuel Friere [D.E. 132] be **GRANTED** based on the Defendant's admission to Violation 1 of the Petition and the undersigned's finding that the government met its burden of establishing the charges set forth in Violations 2 and 4 of the Petition.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable K. Michael Moore, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein.  *R.T.C. v. Hallmark Builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 11th day of June, 2014.

        /s/ *Edwin G. Torres*
        EDWIN G. TORRES
        United States Magistrate Judge